# EXHIBIT A



**OCTOBER 8, 2021**

**RICHARD HARRIS**
**23 NOTTINGHAM CIR #23**
**PEEKSKILL, NY 10566**

| Account Information | |
|---|---|
| **Online:** | yourwellsfargomortgage.com |
| **Fax:** | $1-866-359-7363$ |
| **Telephone:** | $1-800-416-1472$ |
| **Correspondence:** | PO Box 10335 |
| | Des Moines, IA 50306 |
| **Hours of operation:** | Mon – Fri, 8 a.m. – 5 p.m. CT |
| **Loan number:** | **(scan barcode)** |
| **Property address:** | **23 NOTTINGHAM CIR** |
| | **PEEKSKILL, NEW YORK** |
| | **10566** |

**Please note**: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the account referenced above, Wells Fargo Home Mortgage is not attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer who is impacted by an active bankruptcy case or who has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. **This is not a bill or a request for payment as to the customers**. Your decision to discuss workout options with Wells Fargo Home Mortgage is strictly voluntary. You are not obligated to pursue any workout options discussed with us. At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

Subject: The Loan Modification Agreement

Dear **RICHARD HARRIS:**

**We're pleased to confirm that you're approved for a loan modification.** We've enclosed an agreement that includes the terms of the loan modification. It's important to note that we're not refinancing the original mortgage.

This letter will help you understand the next steps to accept this modification.

**What you need to do by OCTOBER 23, 2021**
To complete the modification, you'll need to sign, have notarized, and return the following documents to us by **OCTOBER 23, 2021**.

- **Loan Modification Agreement.**
- **Notice of Special Flood Hazard Area (SFHA)**, if enclosed.

We'll put you in touch with a free mobile notary service, but you don't have to wait for them to contact you. You can use any notary service that's convenient for you. If you work with a mobile notary, they'll bring the documents to your appointment, and they'll also take care of sending them back to us. If you work with your own notary, you'll need to send the notarized documents to us by **OCTOBER 23, 2021**. Be sure to make a copy of the documents for your records.

To find a notary service:

- Most Wells Fargo branches have notaries that can help you for free.
- You can also usually find notary services at banks, credit unions, photocopy shops, and stores that offer packaging and shipping services.
- Whether you want to use a notary from one of our branches or another business, it's a good idea to call ahead. That way, you can make sure that notary services are available and schedule an appointment.

You can contact us for a postage-paid envelope, or you can use your own envelope to return the documents to:

> Final Modification Documents
> Document Management
> Wells Fargo Home Mortgage
> 2701 Wells Fargo Way FL. 1
> X9999-01N
> Minneapolis, MN 55467-8000

If you don't return all of these documents to us by **OCTOBER 23, 2021**, and you still want to be considered for a modification, you'll need to contact us immediately.

**Important information about completing this agreement**
- Make sure that all signatures match the printed names. If any of the printed names need to be corrected, please call us immediately. You may be asked to provide documentation, such as a death certificate, a divorce decree, a recorded Quit Claim Deed, or a marriage certificate, to make the correction.
- Once we receive the signed and completed documents and payment from you, we'll modify the loan. Whether or not you accept this agreement, we'll continue to service the loan.

**Details of the Loan Modification Agreement:**

- Due date of first payment: **NOVEMBER 1, 2021**
- New principal balance: **$334,667.76**
- Deferred balance: **$138,971.14**
- New principal and interest monthly payment amount: **$1,568.79**
- Escrowed real estate taxes monthly amount: **$350.07**
- Total monthly escrow payment **$350.07**
- Total modified monthly payment: **$1,918.86**
  This payment amount includes principal, interest, and if applicable, escrow and escrow shortage amounts.
- New maturity date: **JANUARY 1, 2036**
- New interest rate: **4.6650%**

**We're here to help**

I look forward to hearing from you by **OCTOBER 23, 2021.** If you have any questions, please call me at the phone number below.

Sincerely,

**MELISSA YIN**
**Home Preservation Specialist**
**877-458-8417 ext. 1335453262**
**Wells Fargo Home Mortgage**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2021 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

# Sign and return your notarized documents to us within 15 days



*You'll need to sign documents to accept the agreement. Some of those signatures you'll need to have notarized. See the cover letter for information about returning the notarized documents to us.*

## Here's what the process will look like



Arrange a convenient time and place to meet with a notary.



Review the documents enclosed. Contact us if you have any questions along the way.



See the signing instructions, "Work with a Notary to Sign and Return This Agreement in 15 Days," also enclosed. You can use these instructions to complete the documents correctly.



Have a valid, government-issued ID ready. This can be a driver's license, state ID card, or passport. The notary must ensure that it matches the name on the documents.



Please call us when the signing is complete.

## Contact us with any questions

The notary won't be able to answer questions about the information in the documents, but we will.
Please contact us at the number listed on the cover letter.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2021 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

# Work with a notary to sign and return this agreement in 15 days



*Use this checklist with the notary, who must be present when you complete, sign, and date the documents. Your modification will close sooner if you work with the notary to complete your documents correctly.*

## Customers (borrowers)

☐ Review all the documents enclosed, including the agreement, affidavits, and all related documents ("documents"), which may also need to be notarized. If you have any questions, call us before you get started. If needed, we'll prepare new documents for you to sign.

☐ **Work with a notary, who must be present when you complete, sign, and date the documents.** Do not complete, sign, or date the documents unless the notary is present.

☐ Use blue or black ink.

☐ Make sure that all signatures match the printed names. If any of the printed names need to be corrected, please call us immediately.

☐ Write in the date where indicated.

☐ If you or another borrower needs to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Your state may require witnesses to sign these documents. If this is the case, they must neatly print their names below their original signatures.

*Note: The notary can be a witness, except in the states of Georgia and Louisiana. If the notary is a witness, he or she must sign in both the Witness and the Borrower Acknowledgement sections.*

**You can contact us if you have any questions along the way.**

**Call us at the number listed on the cover letter.**

## Notary

☐ Review the documents to be completed and notarized.

*Note: Each set of documents includes the agreement, affidavits, and all related documents ("documents"). The customer must sign the agreement along with any affidavits or related documents, if they're enclosed.*

☐ Use blue or black ink.

☐ Don't print the customer's driver's license or other identification document numbers on the documents.

☐ Both you and the customer must sign where indicated and on the same date. Please also write the month, day, and year.

☐ Make sure that the person signing is the person who is named on the document.

☐ If you need to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Place the stamp and your signature within the document margins. Place the stamp below the Borrower Acknowledgement section on the Acknowledgement page.

*Note: We will fill out the Lender Acknowledgement section. Do not notarize the Lender Acknowledgement section.*

☐ Make sure that the stamp and all other information is legible.

☐ Do not cover any written information with the stamp or your signature.

☐ Complete the state and county.

☐ Print your name under your signature in the Acknowledgement section. When you notarize the Borrower Acknowledgement section, provide the date your commission expires.

☐ Also print your name after the "before me" paragraph in the Acknowledgement sections. In different states, this might say "acknowledged before me" with a blank line, "by the undersigned," or other variations.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2021 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

**New Principal Balance**. Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, property insurance premiums, and certain assessments paid on your behalf to a third party, will be added to the mortgage loan balance. **As of the modification effective date all late charges that have accrued and remain unpaid will be waived.**

**Unpaid Principal Balance**. Current Unpaid Principal Balance of the loan remaining as of **OCTOBER 8, 2021**. The Unpaid Principal Balance does not include unpaid interest, real estate taxes, property insurance premiums, or assessments paid on your behalf to a third party. **As of the modification effective date all late charges that have accrued and remain unpaid will be waived.**

**Interest Rate**. The interest rate on the modified loan may be adjusted as noted in the attached Loan Modification Agreement.

**Term Extension**. To reduce the mortgage payment, we may extend the term of the mortgage. This means we may spread the payments over a longer period.

**Deferral of Principal**. To further reduce the mortgage payment, we will defer collection of and not collect interest on $138,971.14 of the outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when the modified loan is paid off, which may be when you sell or transfer an interest in the house, refinance the loan, or when the last scheduled payment is due.

**Escrow Account**. The terms of the modification agreement require the servicer to set aside a portion of the new monthly payment in an escrow account for payment of the real estate taxes, property insurance premiums and other required fees. Upon acceptance of the offer, any prior waiver of escrows by your lender is no longer in effect. **Wells Fargo Home Mortgage** will draw on this account to pay the real estate taxes and property insurance premiums, as they come due. Please note after the modification is complete, the escrow payment amount will adjust at least annually if the real estate taxes, property insurance premiums and/or assessment amounts change, so the amount of the monthly payment that **Wells Fargo Home Mortgage** must place in escrow will also adjust as permitted by law. This means that the monthly payment may change. The initial monthly escrow payment will be **$350.07**, which contains the separate escrowed amounts listed above. This amount is included in the loan payment noted in Section 2 of the enclosed modification Agreement; you do not need to remit this amount separately.

**Change To Biweekly Payment Loans**. If the Loan is a biweekly loan, through the enclosed Agreement, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

This Document Prepared By:
**MUNOOR SWETHA**
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**FAMS – DTO RECORDING**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA  92707-9991**

**Tax/Parcel #:  23.15-2-1.1237**
**D: N/A S: 23.15 B: 2 L: 1.1237**
_____ [Space Above This Line for Recording Data] _____  _____

| | |
|---|---|
| **Original Principal Amount: $223,900.00** | **Investor Loan No.**███**862** |
| **Unpaid Principal Amount: $195,696.62** | **Loan No: (scan barcode)** |
| **New Principal Amount: $334,667.76** | |
| **Total Cap Amount: $138,971.14** | |

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

**This property is or will be improved by a one or two family dwelling only.**

Executed on this day: **OCTOBER 8, 2021**
Borrower ("I")[1]: **RICHARD HARRIS**

_____

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as ~~"we" or "our") and vice versa where appropriate.~~



Borrower Mailing Address: **23 NOTTINGHAM CIR #23, PEEKSKILL, NY 10566**
Lender or Servicer ("Lender"): **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1**
Lender or Servicer Address: **60 LIVINGSTON AVENUE, SAINT PAUL, MN 55107**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **DECEMBER 14, 2005** and the Note ("Note") date of **DECEMBER 14, 2005 and Recorded on MARCH 14, 2006 in INSTRUMENT NO./CRFN 460670406, of the OFFICIAL Records of WESTCHESTER COUNTY, NEW YORK**
Property Address ("Property"): **23 NOTTINGHAM CIR, PEEKSKILL, NEW YORK 10566**

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**SEE ATTACHED EXHIBIT "B" FOR MORTGAGE SCHEDULE**


This Loan Modification Agreement ("Agreement") is made on **OCTOBER 8, 2021** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents" Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.



Page 2

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **Borrower Representations.**

   I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the mortgage payments now or in the near future; I did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification;

   B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

   C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

   D. I have made or will make all payments required within this modification process;

   E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

   F. Borrower filed for relief under Chapter **13** of the United States Bankruptcy Code on **JANUARY 28, 2020.**

   G. This agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

   H. Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the above referenced loan pursuant to the Loan Documents between Lender and Borrower. Such agreement granted Lender a valid security interest and an enforceable lien on the property securing the loan.

   I. Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Loan Documents under appropriate circumstances. Borrower and Lender agree that the consideration for this



Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Loan Documents as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

J. Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

K. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

## 2. The Modification.

A. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of the Note will be **$334,667.76** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. **$138,971.14** of the New Principal Balance shall be deferred (the "Deferred Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Balance. The New Principal Balance less the Deferred Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$195,696.62**. Interest at the rate of **4.6650%** will begin to accrue on the Interest Bearing Principal Balance as of **OCTOBER 1, 2021** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **NOVEMBER 1, 2021**. Interest due on each monthly payment will be calculated by multiplying the Interest Bearing Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). The payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 171 | 4.6650% | 10/01/2021 | $1,568.79 | $350.07 | $1,918.86 | 11/01/2021 |

**\* After the modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Borrower agrees to pay in full the Deferred Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date an interest in the Property is sold or transferred, (ii) the date on which the entire Interest Bearing Principal Balance is paid off, or (iii) the Maturity Date.

Borrower agrees that any partial prepayments of Principal may be applied at Lender's discretion first to any Deferred Balance before applying such partial prepayment to other amounts due.

**Notice to Borrower:** The Deferred Balance will result in a lump sum payment due at the time of loan maturity or earlier upon payoff of the loan. If the Borrower does not have the funds to pay the lump sum payment when it comes due, the Borrower may have to obtain a new loan against the property. In that case, the Borrower may have to pay commissions, fees, and expenses for the arranging of the new loan. In addition, if the Borrower is unable to make the monthly payments or the lump sum payment, the Borrower may lose the property and all equity through foreclosure. Keep this in mind in deciding upon this modification. The lump sum payment on this loan is due **JANUARY 1, 2036** or upon earlier payoff of the loan.

3. **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **FEBRUARY 1, 2015** to **NOVEMBER 1, 2021**. The first modified contractual due date is **NOVEMBER 1, 2021**.



Page 5

B. The maturity date is **JANUARY 1, 2036**.

C. The amount of Recoverable Expenses* to be deferred will be U.S. **$9,433.80**.

    *Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00**.

E. Lender will forgive outstanding NSF Fees U.S. **$0.00**.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$60.76**.

G. The amount of interest to be included (deferred) will be U.S. **$101,527.44**.

H. The amount of the Escrow Advance to be deferred will be U.S. **$28,009.90**.

4. **Additional Agreements**.

    I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the



Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. The obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings

on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G. If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.



H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for the modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of



the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **OCTOBER 1, 2021.**

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination



Agreement(s).

T. Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement by **OCTOBER 23, 2021**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**



In Witness Whereof, I have executed this Agreement.

_____     _____
Borrower:**RICHARD HARRIS**                          **Date**

<b>BORROWER ACKNOWLEDGMENT</b>

State of _____

County of _____

On the _____day of _____ in the year _____ before me, the
undersigned, a Notary Public in and for said State, personally appeared **RICHARD
HARRIS**, personally known to me or proved to me on the basis of satisfactory evidence to
be the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument



_____
Notary Public

Printed Name:_____

My commission expires: _____

██████████████████████████



In Witness Whereof, the Lender has executed this Agreement.

**WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1 (POA RECORDED IN WESTCHESTER COUNTY, ON 07/15/2020, INSTRUMENT NO. 601973290, BOOK: , PAGE:)**

By: (print name) _____     (sign) _____     _____
      (title)                                                                          Date

_____ [Space Below This Line for Acknowledgments] _____

State of _____
               SS:

County of _____

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, the _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____
Notary Public

Printed Name: _____

My commission expires: _____

**EXHIBIT A**

BORROWER(S):  RICHARD HARRIS

LOAN NUMBER:  (scan barcode)

LEGAL DESCRIPTION:

Real property in the City of PEEKSKILL, County of WESTCHESTER, State of New York, described as follows:

THE UNIT KNOWN AS UNIT NO. 12-3G (THE "UNIT"), SITUATE, LYING AND BEING IN THE CITY OF
PEEKSKILL, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, KNOWN AND DESIGNATED AS UNIT
NO. 12-3G IN THE DECLARATION ESTABLISHING SOCIETY HILL II AT WESTCHESTER CONDOMINIUMS,
(HEREINAFTER CALLED THE "PROPERTY") MADE BY K. HOVNANIAN AT PEEKSKILL, INC. (THE
SPONSOR) UNDER THE CONDOMINIUM ACT OF THE STATE OF NEW YORK, AS AMENDED, ARTICLE 9-B
OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK, DATED DECEMBER 18, 1987 AND
RECORDED IN THE WESTCHESTER COUNTY CLERK'S OFFICE, DIVISION OF LAND RECORDS ON
JANUARY 8, 1988 IN LIBER 9081 PAGE 49, AS AMENDED BY AMENDMENT DATED JULY 11, 1988 AND
RECORDED IN LIBER 9339 PAGE 1, (HEREINAFTER CALLED THE "DECLARATION") WHICH UNIT IS ALSO
DESIGNATED ON THE OFFICIAL TAX MAPS OF THE CITY OF PEEKSKILL AS SECTION 23.15 BLOCK 2 LOT
1./1237 THE FLOOR PLANS OF THE BUILDING IN WHICH THE UNIT IS LOCATED, CERTIFIED BY RONG
W. LIU, ARE FILED IN THE WESTCHESTER COUNTY CLERK'S OFFICE, DIVISION OF LAND RECORDS ON
JANUARY 18, 1988 AS MAP NO. 23120.
TOGETHER WITH UNDIVIDED 1.230 PERCENT INTEREST IN THE COMMON ELEMENTS (THE "COMMON
ELEMENTS") AS SET FORTH IN THE DECLARATION.
THE LAND AREA OF THE CONDOMINIUM IS MORE PARTICULARLY DESCRIBED AS FOLLOWS:
ALL THAT CERTAIN PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE CITY OF
PEEKSKILL, COUNTY OF WESTCHESTER AND STATE OF NEW YORK AS SHOWN ON A MAP ENTITLED,
"REVISED ROAD MAP OF THE HIGHLANDS - PHASE I PREPARED FOR CAMPUS ASSOCIATES" FILED IN



THE WESTCHESTER COUNTY CLERK'S OFFICE, DIVISION OF LAND RECORDS, AS MAP NO. 21305, MORE

PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT BEING THE INTERSECTION FORMED BY THE EASTERLY LINE OF LANDS NOW

OR FORMERLY OF LOUIS E. MCFADDEN AND THE NORTHERLY LINE OF A MAP FILED IN THE

WESTCHESTER COUNTY CLERK'S OFFICE, DIVISION OF LAND RECORDS, ENTITLED, "SHEET TWO - THE

HIGHLANDS - PHASE I" FILED AS MAP NO. 21430, SHEET TWO, SAID POINT ALSO BEING THE

SOUTHWESTERLY CORNER OF THE PREMISES HEREIN DESCRIBED;

RUNNING THENCE FROM SAID POINT OF BEGINNING ALONG EASTERLY LINE OF LANDS NOW OR

FORMERLY OF LOUIS E. MCFADDEN AND PARTIALLY ALONG THE MEAN CENTERLINE OF A STONE WALL

THE FOLLOWING COURSES AND DISTANCES:

NORTH 13 DEGREES 34 MINUTES 50 SECONDS EAST, 242.48 FEET;

NORTH 13 DEGREES 21 MINUTES 50 SECONDS EAST, 277.03 FEET;

NORTH 60 DEGREES 20 MINUTES 30 SECONDS EAST, 237.93 FEET;

NORTH 59 DEGREES 59 MINUTES 10 SECONDS EAST, 198.94 FEET;

NORTH 60 DEGREES 51 MINUTES 00 SECONDS EAST, 193.83 FEET TO A POINT ON THE SOUTHWESTERLY LINE OF LANDS NOW OR FORMERLY OF CANFIELD;

THENCE RUNNING ALONG SAID LANDS NOW OR FORMERLY OF CANFIELD AND ALONG THE MEAN

CENTERLINE OF A STONE WALL THE FOLLOWING COURSES AND DISTANCES:

SOUTH 33 DEGREES 37 MINUTES 00 SECONDS EAST, 179.80 FEET;

SOUTH 33 DEGREES 12 MINUTES 00 SECONDS EAST, 123.00 FEET;

SOUTH 32 DEGREES 39 MINUTES 00 SECONDS EAST, 73.69 FEET;

SOUTH 32 DEGREES 31 MINUTES 00 SECONDS EAST, 121.98 FEET;

SOUTH 32 DEGREES 25 MINUTES 00 SECONDS EAST, 104.02 FEET;

NORTH 82 DEGREES 33 MINUTES 35 SECONDS EAST, 482.10 FEET TO A POINT ON THE SOUTHWESTERLY LINE OF LANDS NOW OR FORMERLY OF YELLOTT;

THENCE RUNNING ALONG SAID LANDS NOW OR FORMERLY OF YELLOTT AND ALONG THE MEAN

CENTERLINE OF A STONE WALL THE FOLLOWING COURSES AND DISTANCES:

SOUTH 27 DEGREES 37 MINUTES 20 SECONDS EAST, 459.35 FEET;

SOUTH 24 DEGREES 46 MINUTES 40 SECONDS EAST, 328.79 FEET;

SOUTH 25 DEGREES 18 MINUTES 10 SECONDS EAST, 223.64 FEET TO A POINT BEING THE NORTHEASTERLY CORNER OF LANDS NOW OR FORMERLY OF KINSEY;

THENCE TURNING AND RUNNING ALONG SAID LANDS OF KINSEY AND ALONG LANDS NOW OR

FORMERLY OF GUINZBERG, SOUTH 86 DEGREES 13 MINUTES 50 SECONDS WEST, FOR A DISTANCE OF

713.62 FEET TO A POINT;

THENCE RUNNING ALONG A FILED MAP ENTITLED, "SHEET ONE - THE HIGHLANDS - PHASE I" FILED AS

MAP NO. 21430 SHEET ONE AND ALONG OTHER LANDS NOW OR FORMERLY OF CAMPUS ASSOCIATES



THE FOLLOWING COURSES AND DISTANCES:

NORTH 09 DEGREES 58 MINUTES 00 SECONDS EAST, 31.43 FEET;

NORTH 89 DEGREES 31 MINUTES 34 SECONDS WEST, 39.48 FEET;

NORTH 12 DEGREES 08 MINUTES 16 SECONDS WEST, 92.01 FEET;

SOUTH 76 DEGREES 57 MINUTES 15 SECONDS WEST, 142.93 FEET;

NORTH 04 DEGREES 57 MINUTES 24 SECONDS EAST, 31.98 FEET;

NORTH 85 DEGREES 02 MINUTES 32 SECONDS WEST, 225.02 FEET TO A POINT ON THE NORTHEASTERLY END OF MCFADDEN ROAD AS SHOWN ON PREVIOUSLY MENTIONED FILED MAP NO. 21305;

THENCE TURNING AND RUNNING ALONG SAID MCFADDEN ROAD THE FOLLOWING COURSES AND DISTANCES:

NORTH 39 DEGREES 11 MINUTES 32 SECONDS WEST, 50.00 FEET;

ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 82.00 FEET AND A LENGTH, OF 46.39 FEET;

SOUTH 83 DEGREES 13 MINUTES 09 SECONDS WEST, 19.79 FEET;

ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 15.00 FEET AND A LENGTH, OF 27.23 FEET TO A POINT ON THE EASTERLY SIDE OF CAMPUS ROAD AS SHOWN ON SAID FILED MAP NO. 21305;

THENCE RUNNING ALONG SAID CAMPUS ROAD, NORTH 07 DEGREES 13 MINUTES 58 SECONDS EAST, FOR A DISTANCE OF 172.04 FEET;

THENCE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 25.00 FEET AND A LENGTH, OF 38.11 FEET TO THE SOUTHERLY SIDE OF HILL ROAD AS SHOWN ON SAID FILED MAP NO. 21305;

THENCE RUNNING ALONG SAID SOUTHERLY LINE OF HILL ROAD, SOUTH 85 DEGREES 25 MINUTES 27 SECONDS EAST, FOR A DISTANCE OF 246.27 FEET;

THENCE ALONG A CURVE TO THE LEFT HAVING A RADIUS OF 375.00 FEET AND A LENGTH, OF 32.68 FEET TO A POINT;

THENCE TURNING AND RUNNING ALONG THE EASTERLY END OF HILL ROAD AND ALONG A FILED MAP ENTITLED, "SHEET TWO" - THE HIGHLANDS - PHASE I" FILED AS MAP NO. 21430, SHEET TWO, NORTH 01 DEGREES 44 MINUTES 00 SECONDS EAST, FOR A DISTANCE OF 50.04 FEET, NORTH 03 DEGREES 52 MINUTES 40 SECONDS EAST, FOR A DISTANCE OF 134.95 FEET TO A POINT;

THENCE TURNING AND RUNNING ALONG LANDS NOW OR FORMERLY OF CAMPUS ASSOCIATES, SOUTH 84 DEGREES 15 MINUTES 00 SECONDS EAST, 278.35 FEET TO A POINT ON THE EASTERLY SIDE OF CAMPUS ROAD;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF CAMPUS ROAD ON A CURVE TO THE RIGHT HAVING A RADIUS OF 325.00 FEET, A DISTANCE OF 10.00 FEET TO A POINT;



THENCE TURNING AND RUNNING ALONG SAID FILED MAP NO. 21430, SHEET TWO AND ALONG THE
NORTHERLY END OF CAMPUS ROAD, SOUTH 82 DEGREES 33 MINUTES 35 SECONDS WEST, FOR A
DISTANCE OF 303.61 FEET;
THENCE RUNNING ALONG SAID FILED MAP NO. 21430, SHEET TWO, SOUTH 13 DEGREES 34 MINUTES
50 SECONDS WEST, 24.90 FEET;
THENCE NORTH 76 DEGREES 25 MINUTES 10 SECONDS WEST, FOR A DISTANCE OF 400.00 FEET TO
THE POINT OR PLACE OF BEGINNING.
PARCEL II
ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE CITY OF
PEEKSKILL, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, BEING BOUNDED AND DESCRIBED
AS FOLLOWS:
BEGINNING AT A POINT ON THE NORTHEASTERLY END OF HILL ROAD AND LANDS NOW OR
FORMERLY OF CAMPUS ASSOCIATES;
THENCE ALONG SAID LANDS NORTH 03 DEGREES 52 MINUTES 40 SECONDS EAST, 134.93 FEET;
SOUTH 84 DEGREES 15 MINUTES 00 SECONDS EAST, 287.35 FEET TO A POINT ON THE EASTERLY SIDE
OF CAMPUS ROAD;
THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF CAMPUS ROAD ON A CURVE TO THE LEFT
HAVING A RADIUS OF 325.00 FEET AND A DISTANCE OF 39.74 FEET; SOUTH 07 DEGREES 13 MINUTES
58 SECONDS WEST, 76.65 FEET TO A POINT ON THE EASTERLY SIDE OF A CURVE TO THE LEFT
HAVING A RADIUS OF 25.00 FEET, A DISTANCE OF 40.43 FEET AND SOUTH 85 DEGREES 25 MINUTES
27 SECONDS EAST, 241.63 FEET TO THE POINT OR PLACE OF BEGINNING.
TOGETHER WITH THE RIGHT OF INGRESS AND EGRESS IN COMMON WITH OTHERS OVER THE
STREETS OF THE CONDOMINIUM TO AND FROM THE NEAREST PUBLIC HIGHWAY.

Tax/Parcel No. 23.15-2-1.1237
D: N/A S: 23.15 B: 2 L: 1.1237

ALSO KNOWN AS: 23 NOTTINGHAM CIR, PEEKSKILL, NEW YORK 10566



## EXHIBIT B
## MORTGAGE SCHEDULE

Mortgage made by **RICHARD HARRIS** made to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AEGIS FUNDING CORPORATION, ITS SUCCESSORS AND ASSIGNS** for **$223,900.00** and interest, dated **DECEMBER 14, 2005** and recorded on **MARCH 14, 2006** in **INSTRUMENT NO./CRFN 460670406**. Mortgage tax paid: **$2,880.70**.

This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AEGIS FUNDING CORPORATION, ITS SUCCESSORS AND ASSIGNS** (assignor), made to **US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1** (assignee), by assignment of mortgage dated **MARCH 7, 2012** and recorded on **MARCH 22, 2012** in **INSTRUMENT NO. 520803625**.



Date: **OCTOBER 8, 2021**
Loan Number: **(scan barcode)**
Lender: **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1**

Borrower: **RICHARD HARRIS**

Property Address: **23 NOTTINGHAM CIR, PEEKSKILL, NEW YORK 10566**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____          _____
Borrower:                                                                                    Date
**RICHARD HARRIS**



Date: **OCTOBER 8, 2021**
Loan Number: **(scan barcode)**
Lender: **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1**

Borrower: **RICHARD HARRIS**

Property Address: **23 NOTTINGHAM CIR, PEEKSKILL, NEW YORK 10566**

# ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____        _____
Borrower: **RICHARD HARRIS**                                                              **Date**





# Preferred Payment Plan<sup>SM</sup> Enrollment Form

Match your mortgage payments to your payday cycle

Managing your mortgage payments is easy when you enroll in the Preferred Payment Plan. Simply choose the option on the next page that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings* account. The Preferred Payment Plan is free, secure, and more convenient than writing checks and mailing payments.

*Please note: Enrolling in the Preferred Payment Plan does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds may be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.*

This plan is not required; it's one of many options you may choose from to make your mortgage payments.

## Preferred Payment Plan Terms and Conditions

You must agree to the terms and conditions below by completing and signing the form located on the following page:

- I understand that only a borrower on the loan can enroll in the Preferred Payment Plan. I am not a third party.
- I authorize Wells Fargo, its authorized representatives, and service providers to initiate electronic withdrawals from my designated account to make payments on my mortgage.
- I understand that I, or another borrower on the loan, must be the owner on the deposit account used for electronic withdrawals.
- I understand that a business account can only be used to set up electronic withdrawals for my mortgage loan if the business is on the Mortgage Note as a borrower.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of payments, when payments are due, the applications of payments, the assessment of late charges, or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my payment amount.
- I understand that withdrawn funds may not be applied to my mortgage until sufficient funds have accumulated for a full payment to be made.
- I understand that the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

## Preferred Payment Plan enrollment and change options

**Note:** We must receive notification at least 3 business days prior to any requests to temporarily stop, change or cancel participation in this program.

|  | Can I do this by fax or mail? | Can I do this online? | Can I do this by phone? |
|---|---|---|---|
| Enrolling in automatic payments | Yes. | You can enroll online if you access your mortgage at **wellsfargo.com**. | Yes. |
| Temporarily stopping payments, canceling, or making other changes once I'm enrolled | Yes. | You can only cancel payments online. To temporarily stop payments or make other changes, call us. | Yes. |
| How can I do this? | Fill out and sign this form. Fax to: 1-866-287-6241 Or mail to: Wells Fargo Home Mortgage PO Box 10335 Des Moines, Iowa 50306 | Sign on to your mortgage account at wellsfargo.com. Select the Transfer & Pay tab and choose Pay WF Accounts. | Call us at 1-866-234-8271. |

**Fill out this form and return to us using the instructions on page one, and keep a copy of this form with your records.**

## 1. Select the *Preferred Payment Plan* option that matches your pay schedule

Check the appropriate box to mark your choice. If this form is signed, but no option is checked, you will be set up for monthly withdrawals on your due date.

If you choose the weekly or bi-weekly option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance – helping you pay off your mortgage faster. For all options below, the monthly payment includes principal, interest, tax, insurance, and escrow payments, if applicable.

☐ **Weekly:** One-quarter of your monthly payment amount will be withdrawn every week.
   *Request a withdrawal start date (must be Mon.-Fri. and 4 weeks prior to due date):* _____/_____/_____

☐ **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week. In a year's time, 26 withdrawals will be made.
   *Request a withdrawal start date (must be Mon.-Fri. and 3 weeks prior to due date):* _____/_____/_____

☐ **Semi-monthly (twice a month):** Each withdrawal will equal one-half of the total monthly payment due. The full payment must be withdrawn before the end of your grace period. Fill in the dates you would like for each half of your payment to be withdrawn. Half of your monthly payment will be withdrawn on the _____ of the month and the second half will be withdrawn on the_____. In a year's time, 24 withdrawals will be made.

☐ **Monthly:** Your monthly payment amount will be withdrawn on your due date, or you can delay your monthly payment up to 14 days after your due date. Mark below to select the number of days you would like to delay your payment.
   ☐ Due date   ☐ 1 day after   ☐ 2 days after   ☐ 3 days after   ☐ Other (up to 14 days) _____

## 2. Specify additional principal to be withdrawn (optional)

You can choose to add an additional amount to each electronic withdrawal to be applied to your outstanding loan principal.

☐ Yes, please add $ _____ to each of my automatic electronic withdrawals.

## 3. Supply your account information — You must be an owner on the deposit account

You can withdraw from up to 4 different accounts.

| Account Type: Checking or Savings* | Bank routing number: (9-digit number at the bottom left of your check) | Bank account number: (To the right of the bank routing number on your check) | Name on bank account | Amount or % to be withdrawn: |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

☐ I/We certify that I/we am/are an owner on the above accounts, and I/we am/are a borrower on the loan number listed below.

## 4. Signature

By signing below, I agree to the Terms and Conditions on the preceding page and online at wellsfargo.com/preferredterms.

Customer(s) name (print): _____   Customer phone number: _____

Property address: _____   Customer loan number: _____

Customer signature:_____   Date signed: _____

Customer signature:_____   Date signed: _____

**Note:** A newly signed form is required if the Preferred Payment Plan is not set up within 120 days of signing and dating this form.

\* Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts: Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party. A total of six transfers and/or withdrawals in a month including: those listed above, pre-authorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone. For more information, please refer to your account agreement with your financial institution.


Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2019 Wells Fargo Bank, N.A. All Rights Reserved. NMLSR ID 399801

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
## (MODIFICATION AGREEMENT)

State of _____ }
                              }SS

County of _____ }

I, _____, being duly sworn, deposes and says;

1.  That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein

2.  A certain mortgage bearing the date of **DECEMBER 14, 2005**, in the principal amount of **TWO HUNDRED TWENTY-THREE THOUSAND NINE HUNDRED DOLLARS AND 0 CENTS ($223,900.00)** was made by **RICHARD HARRIS** as Mortgagor made to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AEGIS FUNDING CORPORATION, ITS SUCCESSORS AND ASSIGNS** as original Mortgagee, recorded on **MARCH 14, 2006**, in **INSTRUMENT NO./CRFN 460670406**, Mortgage tax paid: **$2,880.70** in the **WESTCHESTER** County Clerk's Office, upon which the mortgage tax was duly paid thereon.

    This mortgage was assigned from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AEGIS FUNDING CORPORATION, ITS SUCCESSORS AND ASSIGNS** (assignor), made to **US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1** (assignee), by assignment of mortgage dated **MARCH 7, 2012** and recorded on **MARCH 22, 2012** in **INSTRUMENT NO. 520803625**.

3.  The instrument offered for recording herewith is a Modification made by **RICHARD HARRIS** made to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-BC1** effective/dated **OCTOBER 8, 2021**, and to be recorded in the **WESTCHESTER** County Clerk's Office.

4.  The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

    a) Unpaid principal balance                **$195,696.62**
    b) New unpaid principal balance        **$334,667.76**
    c) Total Cap Amount                  **$138,971.14**
    d) Additional obligation secured by mortgage as modified

    Additional mortgage recording tax of **$1,807.00** is therefore being paid on this Modification on the sum set forth in 4c.

    That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.



**Wells Fargo Bank, N.A.**

Name: _____          Executed On _____

Title: **Vice President Loan Documentation**

Sworn to before me this _____ day of _____, 20_____

_____

_____, Notary Public
(print name)

State of_____

My commission expires_____

